IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Michael Lee Everage,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:13cv510 (JCC/JFA)** |
| | ) | |
| **Benjamin Wright,** | ) | |
| **Respondent.** | ) | |

MEMORANDUM OPINION

Michael Lee Everage, a Virginia inmate proceeding pro se, has filed a petition for a writ

of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction

of first degree murder entered in the Circuit Court for the City of Virginia Beach. After

respondent moved to dismiss the petition, Everage was given the opportunity to file responsive

materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule

7(K), and he has filed a reply. Accordingly, the matter is now ripe for disposition. After careful

review, the petition will be dismissed with prejudice.

**I. Background**

On December 22, 2008, a jury convicted Everage of first degree murder for the

bludgeoning death of his wife, Robyn. Case No. CR07-2653. The facts underlying the conviction

were described by the Court of Appeals of Virginia as follow:

> On February 19, the day the victim was last seen alive, appellant received a taxi
> ride from his car, parked approximately thirty minutes away, to the victim's
> residence. Appellant later traveled to an automotive supply store and bought a
> side-view mirror for a Ford vehicle. The receipt for the item and its packaging
> were located on the victim's property, and appellant's fingerprints were on the
> packaging. Appellant was seen at the victim's house that day. He operated a loud
> generator and loaded something into the victim's car, which was backed into the
> driveway. A neighbor saw appellant drive away in the victim's car between 2:30

and 3:00 p.m. He dropped off his young child at Dana Barnes' house. At 4:00 that afternoon, a vehicle matching the description of the victim's car was seen stopped along the side of the road near where the victim's body was later recovered. A witness saw the vehicle parked with its back hatch open and saw a man standing by the front passenger door, which was also open. At approximately 4:30, appellant bought twenty bundles of firewood at a nearby convenience store. Later, the victim's car was again seen by the side of the road. The following morning, the car was still there with two flat tires. At 6:00 p.m., appellant returned to Barnes' house to pick up his daughter. Barnes explained appellant seemed nervous and shaken and smelled like bleach.

On February 20, 2007, appellant reported the victim missing. Appellant, Barnes, and David Jantzen searched for the victim and located her car along Shore Drive in Virginia Beach. The next day, the three searched the area around where the victim's car had been parked and Barnes came across the victim's body in a clearing approximately thirty feet from the road. The spot was approximately a quarter of a mile from where appellant had left his car and been picked up by the taxi on February 19. Near the victim's body was a Ford side-view mirror with the victim's DNA on it.

Appellant was arrested on February 25, 2007. Timothy Gurley testified that he was an inmate with appellant. He explained that in May 2007, appellant admitted having killed his wife. Appellant asked Gurley to assist him in covering up the crime and sought to have Gurley help him implicate another in the murder by planting evidence in a neighbor's truck. Gurley presented letters with appellant's fingerprints on them which included instructions for Gurley to follow. Gurley contacted the police. Gurley also explained appellant stated he was motivated to kill the victim because she possessed pictures of him which he believed jeopardized his military career.

Appellant provided conflicting accounts to the police and later admitted he lied to the police and others about the events surrounding the victim's disappearance and death.

Everage v. Commonwealth, R. No. 2032-10-1 (Va. Ct. App. Apr. 13, 2011), slip op. at 2-

3; Resp.'s Ex. B.

Prior to trial, Everage filed a pro se motion for substitution of his appointed

counsel, Daniel Goode, stating: "I feel that I need a lawyer that can handle this case that

has had experience with this type of situation." (T. 1/12/08 at 9). The court inquired if

Everage had evidence of a particularized concern regarding his lawyer, and Everage stated that he did not. (Id. at 9-10). Defense counsel told the court that he had a good relationship with Everage and that Everage was actively involved in the defense, and the prosecutor stated that defense counsel had "worked very diligently in pursuing the investigation." (Id. at 10). The court determined that Everage had expressed only "inchoate concerns" with counsel which the court did not share and which had "no substantial or material basis in fact," and the motion for substitution was denied. (Id. at 11)

During voir dire, three jurors made statements which are relevant here. Juror Carpenter admitted to having some familiarity with the case after hearing news stories about it, but she stated that she was capable of setting aside such information and rendering a verdict based solely on the evidence presented at trial. (T. 12/9/08 at 132). Everage's motion to strike juror Carpenter for cause was denied on the basis that she had affirmed her ability to base a judgment solely upon the trial. evidence. (Id. at 138). Juror Thomas stated that the case sounded "vaguely familiar" because he read the newspaper, but he was capable of deciding the matter based solely upon the evidence and applicable law. (Id. at 193). Everage did not move to strike Thomas. Juror Corbliss informed the court that she had known the prosecutor because their children had played on opposing Little League teams for one season, but they did not socialize. She affirmed that nothing about their acquaintance would cause her to be more or less favorable to Everage. (Id. at 279-71). Defense counsel did not move to strike Corbliss, noting that her contacts with

the prosecutor "seem[ed] to be perfunctory and normal," and the court responded, "I

would concur in that sentiment." (Id. at 273).

By final order dated September 28, 2009, Everage was convicted of first degree murder

and sentenced to 25 years incarceration. Id.  Two months later, Everage's appointed counsel

Goode moved to withdraw on the ground that he had just discovered that another attorney in his

office had represented the informant, Gurley, more than two years earlier. The court granted

Goode's motion and appointed Thomas Reed to represent Everage. (T. 3/10/09 at 9-10).  Everage

moved for a mistrial based on counsel Goode's conflict of interest, and at an evidentiary hearing

on the motion Goode conceded the conflict but testified that he was unaware of its existence until

two months after the trial ended.  (T. 7/27/09 at 15-16).  Goode also stated that he never had any

personal contact with the informant prior to Everage's trial.  (Id.)  The trial court denied the

motion for mistrial, holding that "if Mr. Goode did not know there was a conflict then it could

have no impact on [Everage's] trial and his defense."  (Id. at 66)

Everage pursued a direct appeal, assigning the denial of the motion for mistrial as error.

Noting that "the factual and legal bases were fully developed in the hearing on the motion for

mistrial," the appellate court held that its denial was not error, and observed that Everage "cannot

assert that the prior representation of the informant by the Virginia Beach Public Defender's

Office led Goode to 'avoid fully challenging [the informant] on the defendant's behalf" because

"Goode conducted the trial just as he would have had his office not had any prior interaction with

the informant." Resp. Ex. B, slip op. at 5.  Everage sought further review by the Supreme Court

of Virginia, but his appeal was refused on October 17, 2011. R. No. 110919.

4

On June 21, 2012, Everage filed a petition for a state writ of habeas corpus in the Supreme

Court of Virginia, raising the same claims he makes in this federal proceeding. The Court

dismissed the petition on January 3, 2013. Everage v. Warden, Greensville Corr. Ctr., R. No.

121059 (Va. Jan. 3, 2013); Resp. Ex. A. The court subsequently denied a motion for rehearing, R.

No. 121059, and Everage timely filed the instant application for § 2254 relief on or about April

16, 2013.

## II.  Claims Raised

Everage makes the following claims:

> 1. The trial court erred in denying his Motion to Appoint New
> Counsel, which "constructively" deprived him of his constitutional
> right to effective assistance of counsel.  In this regard, the trial court
> failed to:
>
>> (a) consider the extent of the conflict between
>> Everage and his counsel;
>>
>> (b) make adequate inquiry into his concerns regarding
>> his counsel; and
>>
>> (c) hear available witnesses and other evidence
>> supporting petitioner's concerns.
>
> 2.  He was denied effective assistance of counsel during voir dire
> because his attorney:
>
>> (a) refused to withdraw after Everage expressed his doubts to
>> the court;
>>
>> (b) refused to seek guidance and assistance from an
>> experienced criminal trial attorney during jury selection;
>>
>> (c)  refused to consult with Everage during jury selection;
>>
>> (d)  failed to familiarize himself with state statutes relating to
>> jury selection; and

5

(e)  failed to use peremptory strikes to remove potentially
biased jurors.

In an unnumbered portion of claim 2, petitioner claims that he was
denied due process when the court denied a motion to transfer
venue due to 'adverse media publicity,' denied his motion to strike
a potentially biased juror, and committed errors during jury
selection. He also asserts that counsel's aggregate errors during jury
selection amounted to ineffective assistance.

3.   He was denied effective assistance because his trial counsel
failed to:

(a) subpoena exculpatory evidence as Everage
requested;

(b) call witnesses who would have provided 'critical
testimony;' and

(c) investigate the facts of the case and develop a defense.

In an unnumbered portion of claim 3, Everage alleges that his rights
to due process and effective assistance were violated when the
Commonwealth failed to produce audio recording or transcripts of
his 911 calls to the police.  He also alleges that the Commonwealth
was negligent in failing to advise him during discovery that one of
its witnesses previously testified as a paid informant and to produce
records which would have discredited the witness' testimony.

4.  He was denied effective assistance because his trial counsel:

(a) suffered from hearing loss which impaired his ability to
communicate;

(b) suffered from mental confusion which affected his ability
to recall pertinent information;

(c)  failed to present a coherent closing argument;

(d)  failed to object 'at critical moments' in the trial; and

(e) 'had an aggregate of performance errors which
cumulatively impaired [Everage's] defense, denying
[him] his right to a fair trial.'

6

In an unnumbered portion of claim (4), Everage asserts that he was denied effective assistance because counsel was "unprepared, unskilled, and unprofessional."

5. He was denied effective assistance of counsel because counsel failed to inquire about potential conflicts of interest with a 'key prosecution witness.' In addition, he was denied his right to due process because the trial court denied his motion for mistrial after acknowledging the existence of a conflict. Further, he was denied due process when the Commonwealth failed to disclose during discovery a prosecution witness' prior representation by the Virginia Beach Public Defender's Office, which also employed Everage's counsel, Goode.

6. He was denied effective assistance by appellate counsel Reed because the Virginia State Bar reprimanded him for his handling of Everage's appeal. He also received ineffective assistance from appellate counsel Dorsk, who failed to:

    (a) communicate with Everage concerning appealable issues,

    (b) provide Everage with a copy "of his own appeal;"

    (c) notify Everage that his appeal was dismissed 'due to attorney error;'

    (d) notify Everage when the Court of Appeals denied the appeal; and

    (e) 'address specific errors' made by the Court of Appeals 'in accordance with state procedures and timelines.'

On October 4, 2013, respondent filed a Rule 5 Answer and a Motion to Dismiss, along with a supporting brief and exhibits. Everage filed a brief in opposition. Respondent

acknowledges that petitioner's present claims have been exhausted in the state forum.1 Accordingly, the petition is now ripe for disposition.

### III.  Procedural Default

Everage's claims 1(a), 1(b), 1(c), and the unnumbered portions of claims 2, 3 and 5 are procedurally barred from review on the merits. A state court's finding of procedural default is entitled to a presumption of correctness on federal habeas corpus review, Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), provided two foundational requirements are met. Harris v. Reed, 489 U.S. 255, 262-63 (1989). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris, 489 U.S. at 259. Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The Fourth Circuit has held consistently that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997).

When these two requirements are met, federal courts may not review the barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1)

---

1 Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court.  28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973).  To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

a denial of effective assistance of counsel, (2) a factor external to the defense which impeded

compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v

Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990);

Clanton, 845 F.2d at 1241-42. Importantly, a court need not consider the issue of prejudice in the

absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517

U.S. 1171 (1996).

The Supreme Court of Virginia held that Everage's claims 1(a), 1(b), 1(c), and the

unnumbered portions of claims 2, 3 and 5  were procedurally defaulted pursuant to Slayton v.

Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).  See

Everage v. Warden, Resp. Ex. A, slip op. at 2-19. As the Fourth Circuit has held that Slayton is an

independent and adequate state law ground to bar federal review, those claims likewise are now

barred from review. See Hedrick v. True, 443 F.3d 342, 360 (4th Cir. 2006); Mueller v. Angelone,

181 F.3d 557, 584 (4th Cir. 1999).

In Everage's Brief in Opposition to respondent's Motion to Dismiss, he argues that the

procedural default of his claims was due to his counsel's ineffective assistance, which he states he

has shown in his Brief to Show Cause that he submitted in response to this Court's May 8, 2013

Order. Pet'r Br. Opp'n at 1. Everage argues that Benjamin Thomas Reed, his original counsel on

appeal, "created conflict in the attorney / client relationship by refusing to communicate with

petitioner, refusing to discuss appealable issue, refusing to provide a copy of his appellate brief to

petitioner . . . and failing to file petitioner's appeal on time." Br. Show Cause 1; Dkt # 6.

Petitioner was appointed new counsel, Chad Dorsk, but Dorsk allegedly "refused to confer with

petitioner or submit petitioner's motion" to "allow him time to prepare amendments to his

previous defunct appeal prepared by Reed." Id. Regarding his counsel's performance and

prejudice, petitioner argues "Reed's failure to include (9) nine constitutional violation claims

which the Supreme Court acknowledged *could* have been included on appeal – demonstrated

Reed was ineffective in asserting potential right violations of his client." Id. at 6; see also id. at 9

(making the same claim for why the prejudice element of Strickland is met). He then argues that

the Virginia State Bar's subsequent finding that Reed violated the American Bar Association

ethics standards shows that "Reed failed to meet the normal competency of a criminal attorney."

Id. Everage also argues:

> Had counsel adequately researched petitioner's case, properly communicated with
> his client and not been hindered by a debilitating medical condition, petitioner's
> appeal would have reflected more concise and valid legal arguments accurately
> portraying his client's defense. Counsel refused to discuss with petitioner his
> concerns and consequently submitted an incomplete and ineffective appeal.

Id. at 7.

Petitioner's argument falls short of overcoming the procedural bar of his defaulted claims.

"[A] claim of ineffective assistance [generally must] ... be presented to the state courts as an

independent claim before it may be used to establish cause for a procedural default." Edwards v.

Carpenter, 529 U.S. 446, 452 (2000), quoting Murray v. Carrier, 477 U.S. 478, 489 (1986).

Here, petitioner has not successfully raised independent claims that appellate counsel provided

ineffective assistance by failing to raise the issues involved in the defaulted claims. See Clozza,

913 F.2d at 1104 (meritless ineffective assistance of counsel claim cannot excuse a procedural

default); cf. Martinez v. Ryan, 566 U.S. __, 132 S.Ct. 1309 (2012).  Therefore, counsel's efforts

cannot establish cause for the procedural default of petitioner's claims, Coleman, 501 U.S. at 753-

54, and claims  1(a), 1(b), 1(c), and the unnumbered portions of claims 2, 3 and 5 are barred from federal review.2

### III. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, the federal court may not grant the petition based on the claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).  Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard.  See Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable - a substantially higher threshold."  Schirro v. Landrigan, 550 U.S. 465, 473 (2007).  Importantly, this standard of reasonableness is

---

2In Maples v. Thomas, ___ U.S. ___ , 132 S.Ct. 912, 923 (2012), the Supreme Court held based on "extraordinary facts" that a death-sentenced petitioner had established cause for the procedural default of his claims when he demonstrated that he was "[a]bandoned by counsel [and] left unrepresented at a critical time for his state postconviction petition, and he lacked a clue of any need to protect himself *pro se*." 132 S.Ct. at 917.  It is readily apparent on this record that Everage was not a victim of attorney abandonment, because substitute appellate counsel was appointed for him after he encountered problems with his first appellate lawyer.  Thus, the exception to the general rule carved out in Maples does not apply here.

an objective one." Williams, 529 U.S. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table); accord, Blanton v. Quarterman, 543 F.3d 230, 236 (5th Cir. 2008)..

### IV. Analysis

In all of Everage's federally-cognizable claims, he alleges that he received ineffective assistance of counsel for various reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland, 466 U.S. at 687. To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. And, in this respect, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord Lovitt v. True, 403

F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233.  Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice.

   Claim 2(a)

   In claim 2(a), Everage asserts that he received ineffective assistance of counsel when his lawyer declined to withdraw after Everage expressed reservations about counsel's level of experience and ability to manage a first-degree murder trial. The Supreme Court of Virginia rejected this argument, as follows:

> The Court holds that claim [2(a)] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The record, including the February 12, 2008, transcript, demonstrates that in denying petitioner's motion to relieve his public defender and appoint new counsel, the trial court found petitioner's inchoate concerns regarding counsel's level of knowledge and experience were unsubstantiated.  The court also found nothing to suggest counsel was incompetent to handle a first-degree murder case.  Moreover, petitioner fails to articulate how he was actually prejudiced by counsel's refusal to withdraw.  Counsel was not obligated to withdraw simply because petitioner was dissatisfied with counsel's level of experience. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Everage, Resp. Ex. A, slip op. at 2-3.

   The foregoing determination was not based upon an unreasonable determination of the facts,  nor was it contrary to clearly established federal law.  A defendant is not entitled to have

appointed counsel replaced upon request. Epperly v. Commonwealth, 224 Va. 214, 294 S.E. 2d 882 (1982). Moreover, appointed counsel is under no obligation to withdraw simply because a defendant expresses dissatisfaction with his level of experience. See United States v. Cronic, 466 U.S. 648, 665 (1984) (recognizing that inexperience does not imply ineffectiveness, and noting that "[e]very experienced criminal defense attorney once tried his first case"). In this case, the trial court in denying Everage's motion for appointment of new counsel expressly found that existing counsel was qualified to represent Everage (T. 2/12/08 at 11), and Everage has failed to come forward with anything to call that determination into question. Accordingly, the rejection of this claim by the Supreme Court of Virginia must be allowed to stand. Williams, 529 U.S. at 412-13.

Claim 2(b)

In claim 2(b), Everage asserts that he was denied effective assistance of counsel because his attorney refused to seek guidance from a more experienced trial attorney regarding jury selection procedures. The Supreme Court of Virginia rejected this contention as failing to satisfy either prong of the Strickland analysis, since Everage "fail[ed] to proffer what guidance an experienced trial attorney would have provided regarding jury selection." Everage, Resp. Ex. A, slip op. at 3. That ruling was neither contrary to or an unreasonable application of controlling federal precedent, which recognizes that counsel is not required to consult with the defendant regarding matters of trial strategy. Wainwright v. Sykes, 433 U.S. 72, 91 n.14 (1977). Moreover, since Everage fails to identify the manner in which his counsel's alleged shortcoming affected the ultimate outcome of the trial, he has not shown prejudice under Strickland. Accordingly, the

14

Supreme Court of Virginia's rejection of this claim is entitled to deference here. <u>Williams</u>, 529

U.S. at 412-13.

Claim 2 (c)

In claim 2 (c), Everage argues that his trial counsel provided ineffective assistance by

refusing to accept "input" from petitioner during jury selection and failing to accede to

petitioner's request that peremptory strikes be used on jurors Frederick Thomas and Pamela

Corbliss. The Supreme Court of Virginia found no merit to this argument, because "[w]hether to

use a peremptory strike to remove a potential juror was a matter of trial strategy and tactics for

which counsel was not obliged to accept petitioner's 'input'." <u>Everage</u>, Resp. Ex. A, slip op. at 3-

4. That holding was squarely in accord with federal jurisprudence, which holds that counsel is

not required to consult with a defendant regarding matters of trial strategy. <u>Wainwright</u>, 433 U.S.

at 91, n.14. Thus, Everage has failed to carry his burden to demonstrate that his trial attorney's

performance with respect to not seeking guidance from another attorney amounted to ineffective

assistance of counsel. Because that determination was both factually reasonable and not contrary

to controlling federal law, the same result must be reached here. <u>See</u> <u>Williams</u>, 529 U.S. at 412-

13.

Claim 2(d)

In claim 2(d), Everage argues that he was denied effective assistance of counsel by his

trial attorney's "failure to familiarize himself with the very basic Codes of Virginia" on jury

selection procedures. Pet. 23. When petitioner raised this claim in his state habeas petition, the

Supreme Court of Virginia held:

> [C]laim [2(d)] satisfies neither the "performance" nor the "prejudice" prong of the
> two-part test enunciated in <u>Strickland</u>. Petitioner fails to identify the statutes with

which counsel should have familiarized himself. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 4.

The foregoing holding was in accord with the controlling federal principle that counsel is not required to consult with the defendant regarding matters of trial strategy. Wainwright, 433 U.S. at 91 n.14. Nor does petitioner point with specificity to the manner or manners in which he believes he was prejudiced by counsel's performance during the jury selection process. Thus, as the Supreme Court of Virginia's resolution of this issue was not contrary to or an unreasonable application of settled federal jurisprudence or premised on an unreasonable finding of facts, the same result must be reached here. See Williams, 529 U.S. at 412-13.

      Claim 2(e)

In claim 2(e), Everage argues that he was denied effective assistance of counsel by his trial attorney's refusal to exercise a peremptory strike on juror Frederick Thomas. Everage contends that Thomas demonstrated potential bias when he stated during voir dire that he "may have heard something or read something" in the newspaper regarding Everage's case. Pet. 24. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [C]laim [2(e)] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that upon further questioning, Thomas stated that he had read a couple of years ago about a woman's body being found in a certain area and that there had been an arrest. While Thomas stated the case sounded vaguely familiar, he agreed he would be able to set aside whatever he had read and decide the case based solely on the evidence presented and the applicable law. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 4-5.

In another portion of claim 2(e), Everage argues that he was denied effective assistance of counsel when his attorney failed to use a peremptory strike on juror Pamela Corbliss. Pet. 26. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia rejected it, as follows:

> [This claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The record, including the trial transcript, demonstrates that while Corbliss admitted knowing the prosecutor, she denied socializing with the prosecutor and said she only saw the prosecutor at the baseball filed. Corbliss denied that her familiarity with the prosecutor would cause her to be more or less favorable to the Commonwealth or petitioner. In response to counsel's questions, Corbliss indicated she had possibly four one-on-one conversations with the prosecutor at the baseball filed. Corbliss denied she had any animosity towards the prosecutor or petitioner. Counsel indicated to the court that the contacts between Corbliss and the prosecutor seemed perfunctory and normal in the context of their children's baseball and counsel did not see any bias or prejudice displayed by Corbliss. The court concurred with counsel's assessment. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

<u>Everage</u>, Resp. Ex. A, slip op. at 5-6.

It is well established in federal jurisprudence that a lawyer's "'strategic choices made after thorough investigation ... are virtually unchallengeable'" <u>Gray v. Branker</u>, 529 F.3d 220, 229 (4th Cir.), <u>cert. denied</u>, 129 S. Ct. 1579 (2009), <u>quoting</u> <u>Strickland</u>, 446 U.S. at 690-91, and decisions regarding the use of peremptory challenges have been held to be just such tactical decisions. <u>Gardner v. Ozmint</u>, 511 F.3d 420, 426 (4th Cir. 2007), <u>cert. denied</u>, 555 U.S. 856 (2008). In both of the foregoing instances, there is no indication that the failure to strike either juror Thomas or juror Corbliss affected the outcome of Everage's trial. Under Virginia law, in most instances a juror is subject to dismissal only if he or she cannot "stand indifferent in the cause." <u>Jackson v. Commonwealth</u>, 270 Va. 325, 331, 619 S.E.2d 71, 74 (2005), cert. denied, 126 S.Ct. 1477 (2006). In this case, both jurors at issue indicated that he or she could and would decide the case solely on

the evidence presented at trial and the applicable law, and petitioner has come forward with

nothing to suggest that either did otherwise. Accordingly, the denial of claim 2(e) by the Supreme

Court of Virginia must be allowed to stand here. Williams, 529 U.S. at 412-13.

Claim 3(a)

In a portion of claim 3(a), Everage argues that his counsel failed to subpoena audio

recordings and transcripts of his emergency calls to the police. He contends that this evidence,

along with expert voice analysis, would have demonstrated his genuine concern for his missing

wife. Pet. at 32. When petitioner raised this claim in his state habeas petition, the Supreme Court

of Virginia held:

> [C]laim [3(a)] satisfies neither the "performance" nor the "prejudice" prong of the
> two-part test enunciated in Strickland. Petitioner fails to proffer the audio or
> transcribed content of the alleged 911 calls or any evidence to establish a voice
> analysis would have aided his defense. Thus, petitioner has failed to demonstrate
> that counsel's performance was deficient or that there is a reasonable probability
> that, but for counsel's alleged errors, the result of the proceeding would have been
> different.

Everage, Resp. Ex. A, slip op. at 7.

In the complete absence of a proffer by petitioner of the content of the missing evidence

or the manner in which a voice analysis would have aided his defense, the foregoing holding by

the Supreme Court of Virginia plainly was both factually reasonable and in accord with

applicable federal authorities. Strickland, supra. That result thus may not be disturbed here.

Williams, 529 U.S. at 412-13.

In another portion of claim 3(a), Everage argues that counsel was ineffective for failing to

subpoena sexually explicit photographs of petitioner that could have been used to impeach the

informant, Gurley, who testified that Everage said he killed his wife because she discovered

sexually incriminating photos of him. Pet. at 33. When petitioner raised this claim in his state

habeas petition, the Supreme Court of Virginia held:

> [C]laim [3(b)] satisfies neither the "performance" nor the "prejudice" prong
> of the two-part test enunciated in <u>Strickland</u>. The record, including the trial
> transcript, demonstrates the existence of the photographs was corroborated
> by the testimony of the victim's neighbor, who testified that several days
> before the victim's death, she gave him a CD of sexually graphic
> photographs of petitioner, which the neighbor turned over to the
> prosecution. Even if the photographs did not exist, ample evidence of
> petitioner's motive to kill his wife for reasons other than the alleged
> photographs was presented at trial. Thus, petitioner has failed to
> demonstrate that counsel's performance was deficient or that there is a
> reasonable probability that, but for counsel's alleged errors, the result of
> the proceeding would have been different.

Resp. Ex. A, slip op. at 8. Because the allegedly missing photographs would have

been merely duplicative of the photographs the decedent gave to her neighbor which were

then turned over to the police, petitioner cannot show that he was prejudiced by counsel's

failure to obtain them.  Accordingly, the Supreme Court of Virginia's determination that

counsel's efforts did not amount to ineffective assistance is entitled to deference here.

<u>Williams</u>,  529 U.S. at 412-13.

### Claim 3(b)

In a portion of claim 3(b), Everage contends that his attorney provided ineffective

assistance by failing to present "key witnesses" whose testimony would have been

significant. He argues that counsel failed to consult a medical expert and to subpoena

petitioner's doctors, who allegedly would have testified as to his debilitating back

condition and resultant inability to lift heavy objects.  Petitioner contends that this would

have shown that he was physically incapable of carrying, lifting and dragging his wife's

200-pound body without damaging his back. The Supreme Court of Virginia determined

that this claim satisfied neither prong of the Strickland analysis because petitioner failed

to proffer the expected testimony of any expert witness or his own physicians, and

because "the record, including the trial transcript, demonstrates petitioner's medical

records were admitted at trial." Resp. Ex. A, slip op. at 9. Such a holding is a reasonable

application of the Strickland principles. In general, courts "are reluctant to find

ineffective assistance based upon complaints regarding uncalled witnesses." Lenz v.

True, 370 F.Supp.2d 446, 479 (W.D. Va. 2005). A petitioner cannot show that he was

prejudiced by the absence of a witness' testimony unless he demonstrates "not only that

[the] testimony would have been favorable, but also that the witness would have testified

at trial." Alexander v. McClotter, 775 F.2d 595, 602 (5th Cir. 1985). Thus, where a

petitioner fails to proffer precisely what testimony a missing witness would have provided

and to supply an affidavit verifying that proffer, he does meet his burden to demonstrate

that counsel's performance was ineffective. See Makdessi v. Watson, 682 F. Supp. 2d

633, 654 (E.D. Va. 2010). Therefore, the rejection of this claim by the Supreme Court of

Virginia was factually reasonable and in accord with Strickland, supra, and must be

allowed to stand.

     In another portion of claim 3(b), petitioner contends that counsel provided

ineffective assistance by failing to conduct any investigation of the area where his wife's

body was found or to present expert medical testimony to show that her injuries were

consistent with being struck by a hit-and-run driver. The Supreme Court of Virginia

determined that this claim satisfied neither prong of the Strickland analysis because

petitioner failed to proffer either "what would have been revealed by research of the area

where petitioner's wife's body was found" or "the expected testimony of an expert

witness regarding the injuries sustained by petitioner's wife." Resp. Ex. A, slip op. at 10.

For the reasons just stated, the Virginia court's holding was in accord with applicable

federal principles, Makdessi, 682 F. Supp. at 654, so its determination must not be

disturbed. Williams, 529 U.S. at 412-13.

> Claim 3(c)

In a portion of claim 3(c), Everage alleges that his trial counsel failed adequately

to investigate his case and develop a sufficient defense. Specifically, he argues that

counsel should have investigated Timothy Gurley, the Commonwealth's key witness. Pet.

34. Everage argues that had his trial counsel done so he would have discovered

information on "Gurley's criminal history as a paid informant" and that a conflict of

interest existed between counsel and Gurley because Gurley had also been represented by

the Virginia Beach Public Defender's Office. When petitioner raised this claim in his state

habeas petition, the Supreme Court of Virginia held:

> [C]laim [3(c)] satisfies neither the "performance" nor the "prejudice" prong of the
> two-part test enunciated in Strickland. The record, including the trial transcript,
> demonstrates that Gurley conceded on direct examination that he had been
> convicted of multiple felonies, that he was seeking reconsideration of the sentence
> he was serving, and that the Commonwealth had agreed to tell the judge at
> Gurley's sentencing reconsideration hearing that Gurley had cooperated in
> petitioner's case. On cross-examination, Gurley admitted he had testified in
> another murder case. Further, petitioner fails to allege how he was actually
> prejudiced as a result of the Virginia Beach Public Defender's Office having
> previously represented Gurley. In addition, petitioner fails to proffer an affidavit of
> the Norfolk police officer's expected testimony. Thus, petitioner has failed to
> demonstrate that counsel's performance was deficient or that there is a reasonable
> probability that, but for counsel's alleged errors, the result of the proceeding would
> have been different.

> Everage, Resp. Ex. A, slip op. at 11.

Under the circumstances it describes, the state court's rejection of Everage's claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. Cf. 28 U.S.C. § 2254(d). Decisions concerning the calling of witnesses are matters of strategy left to the attorney, which ordinarily cannot constitute ineffective assistance. Jones v. Barnes, 463 U.S. 745, 808 (1983). Moreover, federal courts hold that a claim of ineffective assistance predicated on a failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided. See Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir.), cert. denied, 499 U.S. 982 (1991) (in the absence of particulars as to what an adequate investigation would have revealed or a proffer of what absent witnesses would have said, a claim of ineffective assistance based on general assertions that additional witnesses should have been called will not lie). Here, counsel made a strategic decision not to conduct further cross examination of Gurley, and Everage offered no affidavits to demonstrate what favorable evidence or testimony the allegedly missing testimony would have produced at his trial. The Supreme Court of Virginia's denial of relief on Everage's claim that counsel was ineffective for failing to conduct further cross examination was thus both factually reasonable and in accord with controlling federal authorities. Williams, 529 U.S. at 412 - 13. Therefore, the claim likewise warrants no federal relief.

In another portion of claim 3(c), Everage argues that his trial counsel was ineffective for failing to conduct forensic analysis on the contents of a tire on his vehicle which he asserts would have corroborated his alibi that he was changing a flat tire at the time he allegedly killed his wife. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [This argument] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to provide any

evidence to support his conclusory allegation that an analysis of the contents of his tire would have supported his alibi defense. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 11-12.

Everage faults counsel for not producing "exculpatory evidence" showing that the "milky substance" on his tire was tire sealant, which he argues would support his alibi that he was fixing a tire while his wife was killed. It is well established in federal jurisprudence that unsupported, conclusory assertions such as these do not warrant habeas relief. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). Because the Virginia court's ruling was based on a reasonable interpretation of the facts and was in accord with applicable federal principles, it is entitled to deference here. See Williams, 529 U.S. at 412 - 13.

In another portion of claim 3(c), Everage alleges that his trial counsel failed to obtain forensic analysis of glass fragments found near his backyard shed and those located at the scene where his wife's body was found to prove that they did not match the side view mirror used as the murder weapon. Pet. 35. Everage states that had the fragments been analyzed, it would have been shown that they were "consistent with the broken medicine cabinet mirror stored in the same shed, recently removed during renovation." Id. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [This argument] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to proffer an affidavit of a forensic expert as to what an analysis of the glass fragments would have revealed. Moreover, the record, including the trial transcript, demonstrates that a detective, with sixteen years' experience in the auto industry, opined that the fragments found inside the shed and outside a smaller shed were consistent with auto mirror glass. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

23

Everage, Resp. Ex. A, slip op. at 12 - 13.

For the reasons stated above, the Supreme Court of Virginia's rejection of petitioner's claim was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts. Therefore, that determination must be allowed to stand. See Williams, 529 U.S. at 412-13.

In another portion of claim 3(c), Everage asserts that counsel provided ineffective assistance by failing to procure forensic analysis of tire irons taken from his and his wife's vehicles. At trial, Timothy Gurley testified that petitioner said he used a tire iron to kill his wife. Pet. 36. Everage argues that forensic analysis of the tire irons could have been used "to refute Gurley's accusations and impeach him for perjury." Id. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [This claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that Gurley testified petitioner told him he struck his wife with a tire iron at their home and later struck her several times with a mirror. A mirror with hair and the victim's blood on it was discovered near her body. A "car jack" was recovered from petitioner's vehicle during the investigation and illuminated positive for Luminal, which reacts with blood and certain cleaning agents such as bleach. This car jack was tested, but no blood was discovered. Moreover, petitioner fails to provide any evidence to support his conclusory allegation that testing the tire irons would have yielded exculpatory evidence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 13. This argument suffers from the same deficiency as do the other portions of claim 3(c): namely, Everage fails to provide an affidavit showing how the results of forensic testing on the tire iron on his or his wife's car would have changed the outcome of the proceeding. As the Supreme Court of Virginia noted, Gurley testified that Everage said he

used both a tire iron and later a side-view mirror to bludgeon the victim, and a mirror with the

victim's hair and DNA was found near her body.  Under such circumstances, petitioner's failure

to proffer evidence to support his assertion that analysis of the tire irons would have resulted in

his acquittal is plainly fatal to his claim.  Accordingly, the Supreme Court of Virginia's rejection

of the claim was neither contrary to clearly established federal law nor based on an unreasonable

determination of the facts, and is entitled to deference here. See Williams, 529 U.S. at 412-13.

In another portion of claim 3(c), Everage argues that his attorney provided ineffective

assistance by failing to request that fragments removed from the victim's skull be tested for

additional foreign DNA.  Everage alleges that such testing "could have further identified the

individual that killed" his wife. Id. When petitioner raised this claim in his state habeas petition,

the Supreme Court of Virginia held:

> [C]laim [3(d)(iv)] satisfies neither the "performance" nor the "prejudice"
> prong of the two-part test enunciated in Strickland. Petitioner fails to provide any
> evidence to support his conclusory allegation that an analysis of the "objects"
> removed from his wife's skull would have yielded exculpatory evidence.
> Moreover, the record, including the trial transcript, demonstrates the medical
> examiner found "fragments of debris" in the victim's head lacerations, which were
> too small to identify and may have been part of the dirt. Thus, petitioner has failed
> to demonstrate that counsel's performance was deficient or that there is a
> reasonable probability that, but for counsel's alleged errors, the result of the
> proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 14.  As the Supreme Court of Virginia held, Everage's

conclusory allegations that analysis of the fragments removed from his wife's head would have

yielded exculpatory evidence are entirely unsupported, and hence fall short of demonstrating that

the outcome of the trial was altered by the absence of such evidence. As with Everage's earlier

arguments, that determination was in accord with controlling federal principles, Nickerson, 971

F.2d at 1136, and it will not be disturbed here.  See Williams, 529 U.S. at 412-13.

In another portion of claim 3(c), Everage asserts that counsel performed ineffectively bey failing to request forensic analysis of a cigarette pack and a beer bottle found near the victim's body. Pet. 36; Tr. 877. Everage alleges that his counsel was ineffective in refusing to have "the plastic cigarette pack and beer bottle tested for fingerprints or additional DNA evidence," because they could have yielded "exculpatory evidence" which "could have further identified the actual murderer." Pet. 36. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [This argument] satisfies neither the "performance" nor the "prejudice"
> prong of the two-part test enunciated in Strickland. Petitioner fails to provide any
> evidence to support his conclusory allegation that an analysis or testing of the
> cigarette pack and beer bottle would have yielded exculpatory evidence. Thus,
> petitioner has failed to demonstrate that counsel's performance was deficient or
> that there is a reasonable probability that, but for counsel's alleged errors, the
> result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 14-15. Everage has failed to demonstrate that the foregoing determination was either contrary to clearly established federal law or based on an unreasonable determination of the facts. Petitioner offers no evidence to support his utterly conclusory assertion that forensic analysis of the items at issue would have yielded exculpatory evidence, and the Supreme Court of Virginia's rejection of his claim on that basis was in full accord with federal law. Nickerson, 971 F.2d at 1136. Under such circumstances, the state court's determination that Everage's claim warranted no relief must be allowed to stand. Williams, 529 U.S. at 412-13.

In another portion of claim 3(c), Everage argues that counsel provided ineffective assistance by failing to have the side-view mirror tested to determine its metallurgical strength and the force necessary to dislodge it from the door of a moving vehicle. He asserts that as a result, he was unable to contradict the Commonwealth's theory that the mirror recovered from

beside his wife's body was the same mirror he purchased on the day she died. When petitioner

raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [C]laim [3(d)(vi)] satisfies neither the "performance" nor the "prejudice"
> prong of the two-part test enunciated in Strickland. Petitioner fails to provide any
> evidence to support his conclusory allegation that metallurgical or tensile strength
> testing on the mirror would have yielded exculpatory evidence. Thus, petitioner
> has failed to demonstrate that counsel's performance was deficient or that there is
> a reasonable probability that, but for counsel's alleged errors, the result of the
> proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 15. Again, Everage fails to provide an affidavit showing

how DNA testing would have resulted in exculpatory evidence. See Bassette, 915 F.2d at 941.

Accordingly, the Supreme Court of Virginia's rejection of petitioner's present claim was neither

contrary to clearly established federal law nor based on an unreasonable determination of the

facts, and it will not be disturbed. Williams, 529 U.S. at 412-13.

Claim 4(a)

In claim 4(a), petitioner argues that counsel provided ineffective assistance because he

suffered from hearing loss, and his condition prevented him from adequately hearing testimony,

arguments and statements made by the court. The Supreme Court of Virginia denied relief on the

claim on the holding that petitioner "fail[ed] to allege how he was actually prejudiced as a result

of counsel's alleged hearing difficulties," and that he consequently "failed to demonstrate ... a

reasonable probability that, but for counsel's alleged errors, the result of the proceeding would

have been different." Resp. Ex. A, slip op. at 16. That ruling was not an unreasonable

determination of the facts, nor was it an unreasonable application of Strickland, supra.

Accordingly, it is entitled to deference here. Williams, 529 U.S. at 412-13.

Claim 4(b)

In claim 4(b), Everage contends that he was denied effective assistance because counsel suffered episodes of mental confusion, lack of capability, and inability to stay engaged in the trial proceedings. He argues that these diminished cognitive abilities hindered counsel's performance in that he could not accurately recall facts, important dates, or the names of the witnesses and jurors, nor could he write and read trial notes. Pet. 40-41. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [C]laim [4(b)] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to proffer evidence to support his allegation that counsel suffered from diminished cognitive function during petitioner's trial. In addition, petitioner fails to articulate how he was actually prejudiced as a result of counsel's alleged errors. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A at 16-17.

For the reasons expressed in the state court's order, its rejection of Everage's present conclusory claim was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts. Therefore, that result is entitled to deference here. See Williams, 529 U.S. at 412-13.

In an unnumbered portion of claim 4, Everage charges his counsel with being "unprepared, unskilled, and unprofessional." Pet. 42. Specifically, Everage argues that counsel failed "to provide the trial court with vital documents, fail[ed] to provide his own defense exhibits and fail[ed] to familiarize himself with proper trial procedures," which was "indicative of a lack of concern in preparation in representing his client with effective representation." Id. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia held:

> [C]laim [4(a)(iii)] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate how he was actually prejudiced by counsel's alleged errors. Thus, petitioner has

28

failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, R. No.121059 at 17.

The state court's rejection of this claim was not contrary to, or an unreasonable

application of law, nor was it based on an unreasonable determination of the facts. Williams, 529

U.S. at 412–13. Therefore, this claim warrants no federal relief.

Claim 4(c)

In claim 4(c), Everage asserts that trial counsel was ineffective for giving a "damaging

closing argument." Pet. 45. Specifically, Everage argues that the strongest points in his defense

centered around his physical inability to "do what the prosecution accused him of doing, that is

carrying his wife's 200-lb body," but that his trial counsel "not only contradicted" his medical

defense but supported the Commonwealth's case "by removing any reasonable doubt the jury

may have had that Everage could have committed the crime." Pet. 47. He also charges counsel

with making random, incoherent statements during closing argument, and of calling petitioner a

"liar." When petitioner raised this claim in his state habeas petition, the Supreme Court of

Virginia held:

> [C]laim [4(a)(iv)] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates counsel acknowledged in closing argument that petitioner had lied to his wife about certain things, but argued petitioner told the truth at trial and the fact that he had lied did not mean he had murdered his wife. Counsel reviewed the evidence presented and argued why it failed to prove petitioner's guilt. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 17-18.

29

Here, Everage's position is without merit. Defense counsel's statements during closing argument were consistent with his trial strategy of maintaining credibility with the jury. See Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991) (finding that defense counsel's closing argument in a capital case in which he intimated a sense of hopelessness and disgust with client was not ineffective assistance of counsel, but a part of trial strategy). The record shows that part of the Commonwealth's theory of the case was that Everage could not be believed because he had lied to multiple individuals about the events surrounding his wife's death. During her closing argument, the prosecutor told the jury:

> The lies in this case started the day Robyn was killed and they didn't quit until yesterday around lunchtime. He lied to Dana. He lied to Dave. He lied to Detective Tucker. He lied to Detective Klein. To the Norfolk detectives. He lied to Detective Pickell. He lied to Sergeant Seabold. He lied about everything.

Tr. 1679.

In response, defense counsel admitted that Everage had lied to cover up his affairs but argued:

> Here's the problem with the Commonwealth's case. Here's the whole thing in a nutshell. The Commonwealth is trying to get you, ladies and gentlemen, to believe that liar equals murderer. Well, if that's the case, the Commonwealth's got a lot of business coming.

Tr. 1736.

As "'strategic choices made [by counsel] after thorough investigation . . . are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation,'" the state court's rejection of Everage argument regarding his trial counsel's closing argument was not contrary to, or an unreasonable application of federal law, nor was it

based on an unreasonable determination of the facts. See Gray, 529 F.3d at 229, quoting

Strickland, 446 U.S. at 690-91. Therefore, the state court's decision to reject this claim is entitled

to deference here.  Williams, 529 U.S. at 412–13.

      Claim 4(d)

      In claim 4(d), Everage argues that counsel provided ineffective assistance by failing to

object "at critical moments in [the] trial proceedings."  He contends that counsel should have

objected to the chain of custody of items admitted into evidence, as well as to a jury instruction

stating that the Commonwealth was not required to prove motive.  The Supreme Court of

Virginia found no merit to this claim, as follows:

> [This claim] satisfies neither the "performance" nor the "prejudice" prong
> of the two-part test enunciated in Strickland. Petitioner fails to articulate a valid
> basis for an objection to the chain of custody and fails to identify the specific items
> counsel should have contested.  In addition, the jury instruction providing that the
> Commonwealth need not prove motive for killing is an accurate statement of the
> law.  See Brown v. Commonwealth, 238 Va. 213, 221, 381 S.E.2d 325, 230
> (1989). Therefore, any objection to it would have been frivolous. Thus, petitioner
> has failed to demonstrate that counsel's performance was deficient or that there is
> a reasonable probability that, but for counsel's alleged errors, the result of the
> proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 18.

      For the reasons stated by the Virginia court, had counsel interposed the objections

Everage now suggests, they lawfully would have been denied.  Thus, its determination that the

outcome of the trial proceeding was not affected when no such objections were made was

factually reasonable, and its conclusion that ineffective assistance accordingly had not been

demonstrated was appropriate under Strickland.  Therefore, that holding must not be disturbed

here.  Williams, 529 U.S. at 412–13.

Claim 4(e)

In claim 4(e), Everage argues that his trial counsel's errors in the aggregate amounted to ineffective assistance of counsel. Specifically, Everage states that the "numerous errors reflected in the record of [his counsel's] unprofessional comments, below standard performance and severe failures in his investigative and litigation skills resulted in a cumulate effect that" deprived him of his "due process right to a fair trial. Pet. 49. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia found it to be without merit and dismissed it, explaining:

> [This claim] without merit. As addressed previously, petitioner has failed to demonstrate prejudice as a result of counsel's alleged errors. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz v. Warden of the Sussex I State Prison, 26 Va. 318, 340, 593 S.E.2d 292, 305, cert. denied, 542 U.S. 953 (2004).

Everage, Resp. Ex. A, slip op. at  20.

It is settled under federal law that  the cumulative effect of non-errors does not amount to error. See Fisher v. Angelone, 163 F.2d 835, 852 (4th Cir. 1998) (noting that, where it is determined that none of counsel's actions amounted to constitutional error, "it would be odd, to say the least, to conclude that those same actions, when considered collectively," deprived defendant of a fair trial);  Mueller v. Angelone, 181 F.3d 557, 586 n. 22 (4th Cir. 1999) (same). Here, then, where none of counsel's challenged actions standing alone amounted to ineffective assistance, the Supreme Court of Virginia's determination that their aggregate effect likewise did not amount to constitutional error was squarely in line with that authority. Accordingly, its decision is entitled to deference here.  Williams, 529 U.S. at 412–13.

32

Claim 5

In a portion of claim 5, Everage alleges that he was denied effective assistance of counsel by his trial counsel's conflict of interest between himself and Timothy Gurley, the Commonwealth's principal witnesses. Specifically, he argues that this conflict caused his attorney's performance to fall below the standard of effective representation, and that had his trial counsel "sought assistance from an experienced criminal trial attorney as Everage repeatedly requested, the conflict of interest would never have occurred." Pet. 56. Everage points to the fact that the trial court granted  counsel's Motion to Withdraw because of this conflict as support. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia found it to be without merit and dismissed it, explaining:

> [This claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate an actual conflict of interest, and he does not demonstrate any prejudice resulting from the alleged conflict. Thus, petitioner has failed to establish either an actual conflict of interest or an adverse effect on counsel's performance. See Mickens v. Taylor, 535 U.S. 162, 172 (2002). Therefore, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 19.

"To demonstrate a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known," a defendant must show the conflict adversely affected his representation. As discussed above, the issue of conflict was fully litigated post-trial, and Goode conceded that conflict existed.  However, the salient inquiry is not whether conflict existed, but rather whether it adversely affected the defendant's representation. Mickens, 535 U.S. at 168. Thus, breach of an ethical standard does not necessarily equate with a Sixth Amendment violation.  Id. at 176, citing Nix v. Whiteside, 475

U.S. 157, 165 (1986). Here, where it was established that counsel was unaware of the conflict until after the trial, there was no showing whatever that the unperceived conflict adversely affected counsel's efforts on Everage's behalf. Thus, the state court's rejection of Everage's present claim was neither contrary to clearly established federal law nor based on an unreasonable determination of the facts, and its ruling must be allowed to stand. Williams, 529 U.S. at 412-13.

In another unnumbered portion of claim 5, petitioner makes the related claim that the trial court violated his rights when it denied his motion for mistrial based on counsel's conflict of interest. When Everage raised this same claim on direct appeal, the Court of Appeals of Virginia concluded that "[counsel] Goode conducted the trial just as he would have had his office not had any prior interaction with the informant." Resp. Ex. B, slip op. at 5. Because that was the last reasoned state court decision on the claim at issue, its reasoning is imputed to the Supreme Court of Virginia, which refused further appeal without explanation. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). On federal habeas review, a federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539, 546-47 (1981). Here, where the state court found as fact essentially that the existence of the conflict did not affect counsel's conduct of Everage's trial, the denial of the motion for mistrial did not impinge upon Everage's right to fair trial and due process. Accordingly, his contrary argument here is without merit.

Claim 6

In a portion of claim 6, Everage alleges that he was denied effective assistance by his original appellate counsel, Benjamin Thomas Reed, because Reed failed  timely to file the direct appeal, to communicate with him about the  appeal, and to inform him that the appeal was

dismissed as the result of Reed's negligence. When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia found it to be without merit and dismissed it, explaining:

> The Court holds this . . . claim [is] moot. The record, including exhibits attached to the petition, demonstrates petitioner was granted a delayed appeal to the Court of Appeals and substitute counsel. Therefore, petitioner has been granted all the relief to which he is entitled.

Everage, R. No.121059 at 21.

Because the Court of Appeals of Virginia cured the effects of Reed's negligence by granting Everage a delayed appeal and providing him with substitute appellate counsel, Everage received all the relief to which he was entitled. Thus, the Virginia court's dismissal of this claim as moot was not contrary to or based on an unreasonable application of established federal law, nor was it based on an unreasonable interpretation of the facts. Williams, 529 U.S. at 412-13. The fact that Reed was reprimanded by the Virginia Bar for his actions does not convert the situation into a constitutional violation. Mickens, 535 U.S. at 176. Accordingly, this claim warrants no federal relief.

### Claim 6(a) and 6(c)

In claims 6(a) and 6(c), Everage argues that substitute appellate counsel was ineffective because he failed to communicate with Everage "regarding petitioner's concerns of appealable issues and questions in the preparation of his appeal." When petitioner raised this claim in his state habeas petition, the Supreme Court of Virginia found it to be without merit and dismissed it, explaining:

> The Court holds that [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Thus, petitioner has failed to demonstrate that counsel's

performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 21.

The Strickland analysis applies to claims of ineffective assistance on appeal as well as at trial. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). Federal law recognizes hat counsel's choice of which issues to raise on appeal is a strategic decision which is virtually unassailable. See Jones, 463 U.S. at 751-52; Townes v. Commonwealth, 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987) (appellate counsel decides what questions should be raised on appeal). Nor does appellate counsel have a constitutional duty to raise every non-frivolous issue on appeal, and counsel retains discretion to decide what arguments to present. Jones, 463 U.S. at 751-52. Pursuant to these authorities, the ruling by the Virginia court was not contrary to or based on an unreasonable application of established federal law, nor was it based on an unreasonable interpretation of the facts. Accordingly, the same result must occur here. Williams, 529 U.S. at 412-13.

Claims 6(b), 6(d), and 6(e)

In claims 6(b), 6(d) and 6(e), Everage argues respectively that substitute appellate counsel provided ineffective assistance by failing to provide Everage with a copy of the petition for appeal, to notify Everage that the Court of Appeals denied the appeal, and to "address specific errors included in the Court of Appeals' determination in accordance with state procedures and timelines." When petitioner made these same arguments in his state habeas petition, the Supreme Court of Virginia found them to be without merit, explaining:

> The Court holds that [these claims] fail to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate how the outcome of his appeal would have been different but for counsel's alleged errors.

Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Everage, Resp. Ex. A, slip op. at 22.

The state court's foregoing determination as not contrary to, or an unreasonable

application of law, nor was it based on an unreasonable determination of the facts. Therefore,

these claims merit no federal relief. Williams, 529 U.S. at 412–13.

### V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition for habeas corpus

relief will be granted, and the petition will be dismissed with prejudice. An appropriate Order

shall issue.

Entered this _____ day of _____ 2014.

Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge